**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

PATRICIO LINARES,

                         Plaintiff,

        - v -                                          Civ. No. 9:03-CV-1408
                                                                                    (LEK/RFT)

ALBRITH, *Registered Nurse*; ERI SCHWEBKE;
ANTHONY DeLAROSA,[1] *Administrator for the Messhall*;
and R.N. NURSE KUDLACK,

                        Defendants.
_____

**APPEARANCES:**                                **OF COUNSEL:**

PATRICIO LINARES
98-A-2822
Plaintiff, *Pro se*
Southport Correctional Facility
P.O. Box 2000
Pine City, New York 14871

HON. ANDREW M. CUOMO                    MEGAN M. BROWN, ESQ.
Attorney General of the State of New York      Assistant Attorney General
Attorney for Defendants
New York State Department of Law
The Capitol
Albany, New York 12224

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

**REPORT-RECOMMENDATION and ORDER**

    *Pro se* Plaintiff Patricio Linares brings the instant civil rights action, pursuant to 42 U.S.C.

§ 1983, alleging Defendants violated his constitutional rights. Dkt. No. 1, Compl. Specifically,

Plaintiff asserts that Defendants John Kudlack, M. Joy Albrith, Eric Schwebke, and Anthony

_____
[1] Plaintiff has apparently misnamed Defendants Albrith, DeLaRosa, and Schwebke, whose correct names are M. Joy Albright, Anthony DeRosa, and Eric Schwebke. The Court shall refer to these Defendants by their proper names.

DeRosa were deliberately indifferent to his serious medical needs, in violation of the Eighth Amendment, when they failed to provide timely medical treatment for his fractured finger. *Id*. at ¶¶ 40-42. He further alleges that Defendants Kudlack and Albright failed to provide timely medical attention as retaliation for past grievances Linares filed against them. *Id*. at ¶¶ 18, 40, & 42.

Defendants have moved for Summary Judgment, pursuant to Federal Rule of Civil Procedure 56(b), Dkt. No. 77, which Plaintiff has opposed, Dkt. No. 84. For the reasons that follow, it is hereby recommended that Defendants' Motion be **granted** and this case be **dismissed**.

## I. BACKGROUND

Though Plaintiff submitted papers purportedly in opposition to Defendants' Motion, he has not provided this Court with a proper Statement of Material Facts, that is, one that "mirror[s] the movant[s'] Statement of Material Facts by admitting and/or denying each of the movant[s'] assertions in matching numbered paragraphs." N.D.N.Y.L.R. 7.1(a)(3). Instead, Plaintiff's 7.1 Statement has no bearing nor correlation to Defendants' 7.1 Statement. *Compare* Dkt. No. 77-16, Defs.' 7.1 Statement *with* Dkt. No. 84, Pl.'s 7.1 Statement. Keeping in mind Plaintiff's *pro se* status, we shall refer to his verified Complaint and deposition testimony when practicable. However, *pro se* status notwithstanding, in light of Plaintiff's failure to <u>specifically</u> controvert facts asserted by Defendants, "[a]ny facts set forth in the [Defendants'] Statement of Material Facts shall be deemed admitted[.]" N.D.N.Y.L.R. 7.1(a)(3).

On December 5, 2000, while Plaintiff was performing his duties as a back-sink worker in the Coxsackie Correctional Facility mess hall, a pan fell on Plaintiff's right hand. Defs.' 7.1 Statement at ¶ 1; Compl. at ¶ 12. Plaintiff attributes this accident to the fact that he was not provided any training nor protective gloves, which he allegedly requested from Defendant Eric Schwebke, Head

Cook, prior to the accident, but was refused. Compl. at ¶¶ 12 & 26. After sustaining the injury, Plaintiff was examined by Defendant John Kudlack, R.N. Defs.' 7.1 Statement at ¶ 8. Linares explained to Nurse Kudlack that he had dropped a pot on his right hand and complained of pain in his hand, fingers, and wrist. *Id.*; Compl. at ¶ 15. Due to the fact that Plaintiff's hand was swollen, Defendant Kudlack was unable to determine the extent of the injury and thought it might be appropriate to have Plaintiff's hand x-rayed. Defs.' 7.1 Statement at ¶ 9; Compl. at ¶ 16; Dkt. No. 77-2, John Kudlack Decl., dated Jan. 23, 2007, at ¶ 5. Since Plaintiff had not presented a condition of urgency, *i.e.*, he was not bleeding, there was no deformity of his hand, and he could move his fingers, Nurse Kudlack determined the best course of action would be to ice his hand, take pain medication, and have him seen the following day by a physician. Defs.' 7.1 Statement at ¶ 10; Kudlack Decl. at ¶ 6. Nurses do not have the authority to order x-rays and by the time Plaintiff came to the infirmary, the physician on call had already departed for the day. Defs.' 7.1 Statement at ¶ 10; Kudlack Decl. at ¶ 6. Thus, Nurse Kudlack instructed Linares on how to properly ice his wrist and when to take the pain medication, advised him to report to morning sick call for a possible x-ray, and provided him with an ice pack and Tylenol. Defs.' 7.1 Statement at ¶ 11; Compl. at ¶ 16. Thereafter, Defendant Kudlack had no further contact with Plaintiff relative to this injury. Defs.' 7.1 Statement at ¶ 12.

The following date, Plaintiff reported back to the infirmary where he was examined by Defendant M. Joy Albright, R.N.. *Id.* at ¶ 14. During her examination, Defendant Albright observed some swelling at the top of Plaintiff's right hand, however, there was no bruising, redness, open areas, bleeding, nor deformity. *Id.* at ¶ 15; Dkt. No. 77-3, M. Joy Albright Decl., dated Jan. 26, 2007, at ¶ 4. Linares complained of pain in the 4th and 5th fingers of his right hand, though he had

full range of motion of his wrist and fingers. Defs.' 7.1 Statement at ¶¶ 16-17; Albright Decl. at ¶¶ 5-6. Based on this examination, Albright did not think that Linares had suffered a fracture. Defs.' 7.1 Statement at ¶ 18. Nonetheless, as a precautionary measure, Defendant Albright ordered Plaintiff not to work from December 6, 2000 to December 8, 2000, and advised him to return to Health Services on December 8th for a follow-up examination, or sooner if his condition worsened. *Id*. at ¶ 19. Nurse Albright also ordered Linares to implement regular twenty-minute hot soaks of his right hand and administered Advil. *Id*. at ¶ 20.

Plaintiff did not appear for a follow-up examination on December 8, 2000, and returned to work at the mess hall on December 11, 2000. *Id*. at ¶ 22; Compl. at ¶¶ 19-20. Linares claims he complained about the pain in his right hand and his inability to work to Defendant Schwebke; he further asserts that he requested to be sent to emergency sick-call, but Defendant Schwebke refused to send Plaintiff for medical attention. Compl. at ¶ 21. After the encounter with Schwebke, Linares allegedly complained to Defendant Anthony DeRosa, Food Administrator, about his right hand and asked to be sent to emergency sick-call, but DeRosa similarly refused. *Id*. at ¶¶ 23-24.

Plaintiff did not return to Health Services until December 12, 2000, at which point he was again examined by Defendant Albright. Defs.' 7.1 Statement at ¶ 32. In his Complaint, Linares claims that he returned to the infirmary because he could no longer tolerate the pain and his right hand was "turning black and green and was emitting a foul odor." Compl. at ¶ 28. Though the swelling of his right hand had gone down, Linares stated he was unable to fully move his 4th and 5th fingers. *Id*. at ¶ 29; Defs.' 7.1 Statement at ¶ 33. Due to this lack of mobility, Nurse Albright ordered Plaintiff not to work from December 12, 2000 until December 15, 2000, and referred him to the physician on call to determine whether it was appropriate to order an x-ray examination.

Defs.' 7.1 Statement at ¶ 33; Albright Decl. at ¶¶ 11, 24, & 25.  Thereafter, Defendant Albright had no further contact with Plaintiff in relation to this injury.  Defs.' 7.1 Statement at ¶ 34.

Pursuant to that referral, Plaintiff was seen, the following day, by Robert Chaloner, M.D.,[2] who upon examining Plaintiff referred him for an orthopedic consultation.  Defs.' 7.1 Statement at ¶ 36; Dkt. No. 77-4, Robert Chaloner, M.D., Decl., dated Jan. 30, 2007, at ¶¶ 4-6.  Richard Uhl, M.D.,[3] a consulting orthopedist, conducted a physical examination on December 13, 2000, eight days after Plaintiff initially sustained the injury.  Defs.' 7.1 Statement at ¶ 39.  During the physical examination, Dr. Uhl observed that Plaintiff's 5th metacarpal was swollen and tender to palpitation, the 5th knuckle was depressed, and the skin was intact.  *Id*. at ¶ 40.  Based upon his physical examination and review of an x-ray taken of the injury on the day of the examination, Dr. Uhl diagnosed a one-week old 5th metacarpal fracture and directed that a cast be placed upon the Plaintiff's hand.  *Id*. at ¶¶ 39 & 41.

On February 7, 2001, Plaintiff had a follow-up examination by an orthopedist wherein Plaintiff's cast was removed and an x-ray was taken.  *Id*. at ¶ 47.  At that time, the consulting orthopedist determined that Plaintiff's fracture was healing.  *Id*.

## II. DISCUSSION

### A. Standard of Review

Pursuant to FED. R. CIV. P. 56(c), summary judgment is appropriate only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."  The moving party bears the burden to demonstrate through "pleadings, depositions,

---

[2] Dr. Chaloner is not a Defendant in this action.

[3] Dr. Uhl is not a Defendant in this action.

answers to interrogatories, and admissions on file, together with affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  "When a party has moved for summary judgment on the basis of asserted facts supported as required by [Federal Rule of Civil Procedure 56(e)] and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party."  *Glazer v. Formica Corp.*, 964 F.2d 149, 154 (2d Cir. 1992).

To defeat a motion for summary judgment, the non-movant must "set forth specific facts showing that there is a genuine issue for trial," and cannot rest on "mere allegations or denials" of the facts submitted by the movant. FED. R. CIV. P. 56(e); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994).  To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) and *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant.  *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998).  "[T]he trial court's task at the summary

judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), *accord*, *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, mere conclusory allegations, unsupported by the record, are insufficient to defeat a motion for summary judgment. *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991).

### A. Eighth Amendment Claims

At the heart of this civil rights lawsuit is Linares' contention that all Defendants acted with deliberate indifference towards his serious medical needs and, in doing so, violated his constitutional rights. He claims that Defendants DeRosa and Schwebke violated the Eighth Amendment when they refused to send Plaintiff to the infirmary so he could get medical attention for his right hand injury. Compl. at ¶¶ 21-27.[4] Plaintiff further asserts that Nurse Albright was deliberately indifferent to his serious medical needs when she failed to "produce" Plaintiff to the infirmary as promised and when she failed to order necessary x-rays for Plaintiff. *Id*. at ¶ 17 & 19. As for Defendant Kudlack, Plaintiff similarly asserts that he failed to provide him with necessary medical treatment when he knew or should have known that Linares had fractured his finger. *Id*. at ¶¶ 29-30.

---

[4] In addition to this medical indifference claim, Linares seems to hold Defendants Schwebke and DeRosa responsible for the accident he sustained since the former allegedly failed to provide proper training and protective gloves while the latter allegedly failed to ensure that his subordinates properly trained the workers and provided proper materials. Compl. at ¶¶ 26-27. Absent any allegation that either of these Defendants physically caused the pan to fall onto Plaintiff's arm, we believe Plaintiff's attempt to assert an Eighth Amendment claim on these facts is far too tenuous.

The Eighth Amendment prohibits the infliction of cruel and unusual punishment and is applicable to the states through the Due Process Clause of the Fourteenth Amendment. *Robinson v. California*, 370 U.S. 660, 666-67 (1962) (cited in *Tramell v. Keane, et al.*, 338 F.3d 155, 161 (2d Cir. 2003)). To state an Eighth Amendment claim for denial of adequate medical care, a prisoner must demonstrate that prison officials acted with "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The plaintiff must allege conduct that is "'repugnant to the conscience of mankind' or 'incompatible with the evolving standards of decency that mark the progress of a maturing society.'" *Ross v. Kelly*, 784 F. Supp. 35, 44 (W.D.N.Y. 1992), *aff'd*, 970 F.2d 896 (2d Cir. 1992) (quoting *Estelle v. Gamble*, 429 U.S. at 102, 105-06). This standard contains both objective and subjective elements. *Smith v. Carpenter*, 316 F.3d 178, 183 (2d Cir. 2003). "The objective 'medical need' element measures the severity of the alleged deprivation, while the subjective 'deliberative indifference' element ensures that the defendant prison official acted with a sufficiently culpable state of mind." *Id.* at 183-84 (citing *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) & *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)).

In reviewing Plaintiff's Eighth Amendment claims, it is clear that Plaintiff does not even make it past the first prong, that is, he cannot establish that he suffered from a serious medical injury. A medical need is considered serious if it presents "a condition of urgency that may result in degeneration or extreme pain." *Chance v. Armstrong*, 143 F.3d at 702 (internal quotation marks and citations omitted). Some of the factors that determine whether a prisoner's medical condition is serious include: "1) whether a reasonable doctor or patient would perceive the medical need in question as important and worthy of comment or treatment, 2) whether the medical condition significantly affects daily activities, and 3) the existence of chronic and substantial pain." *Brock v.*

*Wright*, 315 F.3d 158, 162-63 (2d Cir. 2003) (internal quotation marks and citations omitted) (noting that an inmate is not required to show "that he or she experiences pain that is at the limit of human ability to bear, nor [does the court] require a showing that his or her condition will degenerate into a life threatening one").

The examination by the orthopedist specialist, Richard Uhl, M.D., which occurred eight days after Linares sustained his injury, along with x-rays taken on that date, revealed that Plaintiff suffered a fracture of the 5th metacarpal of his right hand. Dkt. No. 77-5, Richard Uhl, M.D., Decl., dated Jan. 23, 2007, at ¶ 4. According to Dr. Uhl, the injury Linares sustained is a "common minor injury" often referred to as a "boxer fracture," and it is common for a person who suffers such a fracture to go one week before a cast is applied. *Id*. at ¶ 7. In Dr. Uhl's medical expert opinion,[5] the eight-day delay between the date of the injury and the date on which the cast was applied did not aggravate Linares' injury nor would such delay cause a loss of mobility or strength. *Id*. at ¶¶ 8-9. Furthermore, Dr. Uhl opined that such a minor delay could not cause any disfigurement nor result in skin discoloration as Plaintiff alleged. *Id*. at ¶ 9. Accordingly, it is clear that Plaintiff has not presented a serious injury and thus we need not consider the subjective prong of his Eighth Amendment claim. *See Magee v. Childs*, 2006 WL 681223, at *4 (N.D.N.Y. Feb. 27, 2006) (citing cases which hold that a broken finger is <u>not</u> a serious injury). Based on the above, we recommend that Plaintiff's Eighth Amendment claims against all Defendants be **dismissed**.[6]

---

[5] Defendants have submitted Dr. Uhl's *curriculum vitae*. Uhl Decl., Ex. C.

[6] Incidentally, we note that Plaintiff's claims against each Defendant could be dismissed on the basis that the purported action he complains of should have been undertaken by each Defendant was not within their authority. For example, Plaintiff criticizes Nurses Kudlack and Albright for failing to order an x-ray, however, nurses are not authorized to do that. *See* Albright Decl. at ¶ 25; Kudlack Decl. at ¶ 6. Plaintiff also claims Nurse Albright failed to "produce" Plaintiff for sick-call on December 8, 2000, however, such allegation runs contrary to the well-known sick-call procedures wherein it is an inmate's responsibility to ensure that he places a request for sick-call by leaving the form outside of his cell door the preceding evening; medical staff do not have the authorization to produce inmates for sick

## D. Retaliation Claims

In addition to the Eighth Amendment claims, Linares asserts that Nurses Kudlack and Albright refused to provide him with medical treatment as retaliation for prior inmate grievances Linares had submitted regarding these two Defendants. The fact that Defendants' actions, or alleged inactions, do not amount to an Eighth Amendment violation does not preclude our review of these retaliation claims. *See Soto v. Iacavino*, 2003 WL 21281762, at *2 (S.D.N.Y. June 4, 2003) (citing, *inter alia*, *Franco v. Kelly*, 854 F.2d 584, 590 (2d Cir. 1988), for the proposition that "otherwise constitutional acts may be actionable if taken in retaliation for the exercise of First Amendment rights"). However, as explained below, we find that based upon the uncontested material facts before this Court, it is clear that both Nurses did in fact provide medical treatment to Linares and that their actions did not amount to unconstitutional retaliation.

It is well established that prison officials may not retaliate against inmates for exercising their constitutional rights. *Jones v. Coughlin,* 45 F.3d 677, 679-80 (2d Cir. 1995); *Franco v. Kelly,* 854 F.2d 584, 589-90 (2d Cir. 1988). To state a First Amendment claim for retaliation, an inmate must demonstrate (1) he or she was engaged in constitutionally protected activity, (2) the defendant took adverse action against the plaintiff, and (3) there was a causal connection between the protected speech and the adverse action in that the alleged conduct was substantially motivated by the protected activity. *Morales v. Mackalm*, 278 F.3d 126, 131 (2d Cir. 2002) (citing *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001)).

---

call. Albright Decl. at ¶¶ 13-20. Since Plaintiff appeared numerous times for sick-call on a non-emergency basis, it is reasonable to impute knowledge of such procedures to him. *See generally* Uhl Decl., Ex. A (Ambulatory Health Record). Similarly, Defendants DeRosa and Schwebke as civilian employees have no authority to send Plaintiff to sick-call, even emergency sick-call; such responsibility lays with the security staff. Dkt. No. 77-6, Anthony DeRosa Decl., dated Jan. 29, 2007, at ¶¶ 4-5; Dkt. No. 77-7, Eric Schwebke Decl., dated Feb. 1, 2007, at ¶¶ 4-5.

The plaintiff bears the initial burden in showing that the defendant's actions were improperly motivated. We may suspend for the moment any doubt as to whether Linares engaged in protective conduct since the filing of grievances surely falls within that category.[7] Nevertheless, Plaintiff's retaliation claim still fails because he cannot satisfy the second prong in that he cannot establish that Nurses Kudlack and Albright took adverse action against him. "Only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation." *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003) (citing *Dawes v. Walker*, 239 F.3d at 493); *see also Gill v. Pidlypchak*, 389 F.3d 379, 384 (2d Cir. 2004). Otherwise, the retaliatory act is "*de minimis* and therefore outside the ambit of constitutional protection." *Dawes v. Walker*, 239 F.3d at 493.

Our finding that Defendants' actions do not amount to adverse actions is based upon the uncontested evidence presented by Defendants in support of their Motion, as well as Plaintiff's version of what occurred. In sum and substance, Linares seeks to hold Nurses Kudlack and Albright responsible for their failure to act in areas beyond their authoritative realm. First, with regard to Nurse Kudlack, we are at a loss as to why Linares believes Nurse Kudlack violated his constitutional rights or why Linares believes Nurse Kudlack acted in a manner contrary to his best interests. When Nurse Kudlack examined Plaintiff on the date of the injury, he provided Plaintiff with an ice pack and pain medication. Kudlack Decl. at ¶ 6; Compl. at ¶ 16. Kudlack also relayed that he was not in a position to determine whether Plaintiff suffered a fracture due to the amount of swelling and advised Plaintiff to report back to Health Services the following day so that it could be assessed

---

[7] Plaintiff filed his Grievances in Spanish, which were translated to English. The translated versions are merely summaries of the original Spanish versions. We are willing to provide Plaintiff the benefit of the doubt that he specifically mentioned Nurses Kudlack and Albright in these prior Grievances, which he attaches to his Opposition to Defendants' Motion. Dkt. No. 84.

whether an x-ray was appropriate. Kudlack Decl. at ¶¶ 5-7; Compl. at ¶ 16. Nurses, however, do not have the authority to order x-rays, and the doctor on call had already left for the day, thus, since Linares' condition did not present an emergency situation, Kudlack acted appropriately. Kudlack Decl. at ¶ 6. The fact that Plaintiff feels Nurse Kudlack should have known he suffered a fracture has no bearing on this Court's assessment as to whether his actions amounted to adverse action. In light of Nurse Kudlack's administration of treatment within his authority as a nurse, and because this is the only contact Nurse Kudlack had with Plaintiff relative to this injury, we find that there is absolutely nothing about this interaction that amounts to adverse action. Therefore, the retaliation claim against Nurse Kudlack must be **dismissed**.

Similarly, with regard to Nurse Albright, to the extent Plaintiff claims Nurse Albright retaliated against him by failing to order x-rays, we again note that nurses do not have the authority to order x-rays. Linares further criticizes Nurse Albright for failing to produce him for sick-call, however, such allegation runs contrary to the well-known sick-call procedures wherein it is an inmate's responsibility to ensure that he places a request for sick-call by leaving the form outside of his cell door the preceding evening; medical staff do not have the authorization to produce inmates for sick call. Albright Decl. at ¶¶ 13-20. The fact that Linares appeared on numerous occasions both before and after his injury for non-emergency sick-call is indicative of the fact that he clearly understood the procedures for sick-call and his responsibilities thereto. *See generally* Uhl Decl., Ex. A (Ambulatory Health Record). And, as with Nurse Kudlack, Plaintiff's allegation that Nurse Albright should have known he suffered a fracture has no bearing on whether her actions amounted to adverse acts. It is clear from the record before the Court that Nurse Albright's treatment did not amount to retaliatory conduct. Upon examining Plaintiff, she did not feel that he

suffered a fracture. Nevertheless, as a precautionary measure, she ordered Plaintiff not to work from December 6 through December 8 and to report back to the infirmary so he could be re-examined. Albright Decl. at ¶¶ 5-6 & 19; Compl. at ¶ 17. She further provided Linares with pain medication and instructions on how to treat his injury. The blame for Plaintiff's failure to appear for sick-call cannot fall upon Albright. When Plaintiff finally returned to the infirmary, based upon her examination and Plaintiff's statements of pain and lack of mobility, Nurse Albright promptly ordered a referral to the doctor. As with Defendant Kudlack, Nurse Albright's actions can hardly be classified as adverse. Thus, the retaliation claim against her should similarly be **dismissed**.

### B. Exhaustion of Remedies

Defendants argue that Plaintiff failed to exhaust his administrative remedies with respect to the claims raised in his Complaint and the consequence of his failure to do so should be dismissal of his action. Because of our recommendations herein, we need not address Defendants' Affirmative Defense of Failure to Exhaust as no constitutional violations have occurred.

### III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that the Defendants' Motion for Summary Judgment (Dkt. No. 77) be **GRANTED** and the Complaint (Dkt. No. 1) be **DISMISSED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE**

**APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), & 6(e).

Date:   September 26, 2007
        Albany, New York

_____
RANDOLPH F. TREECE
United States Magistrate Judge