**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

PATRICIO LINARES,

                            Plaintiff,

            - v -                                                Civ. No. 9:03-CV-1408
                                                                           (LEK/RFT)

ALBRITH, *Registered Nurse*; ERI SCHWEBKE;
ANTHONY DeLAROSA,[1] *Administrator for the Messhall*;
and R.N. NURSE KUDLACK,

                            Defendants.

**APPEARANCES:**                                    **OF COUNSEL:**

PATRICIO LINARES
A90-651-878
Plaintiff, *Pro se*
Buffalo Federal Detention Facility
4250 Federal Drive
Batavia, New York 14020

HON. ANDREW M. CUOMO                    RICHARD LOMBARDO, ESQ.
Attorney General of the State of New York          Assistant Attorney General
Attorney for Defendants
New York State Department of Law            MEGAN M. BROWN, ESQ.
The Capitol                                                  Assistant Attorney General
Albany, New York 12224

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

<u>**REPORT-RECOMMENDATION and ORDER**</u>

        *Pro se* Plaintiff Patricio Linares brought a civil rights action, pursuant to 42 U.S.C. § 1983,

alleging that all of the above named Defendants violated his constitutional rights when they failed

to provide timely medical treatment for his fractured finger.  Dkt. No. 1, Compl. at ¶¶ 40-42.  He

further alleged that Defendants Kudlack's and Albright's failure to provide timely medical attention

---

        [1] Plaintiff misnamed Defendants "Albrith," "DeLaRosa," and "Eri Schwebke," whose correct names are M. Joy Albright, Anthony DeRosa, and Eric Schwebke.  The Court shall refer to these Defendants by their proper names.

was done in retaliation for past grievances Linares filed against them. *Id*. at ¶¶ 18, 40, & 42.

On September 26, 2007, this Court issued a Report-Recommendation and Order recommending that the Honorable Lawrence E. Kahn, Senior United States District Judge, grant Defendants' Motion for Summary Judgment and dismiss the entire Complaint. Dkt. No. 85. The basis for our recommendation of dismissal was our determination that the Defendants' actions did not amount to violations of Plaintiff's constitutional rights. We then reasoned that without the constitutional violation, there was no need to consider the Defendants' affirmative defense that Plaintiff failed to exhaust administrative remedies. *Id* at p. 13. Those recommendations were adopted by Judge Kahn and Judgment was issued on behalf of Defendants on December 4, 2007. Dkt. Nos. 88-89. Plaintiff appealed that Decision and Judgment to the Second Circuit Court of Appeals. Dkt. No. 90. Thereafter, on November 20, 2008, the Second Circuit issued a Mandate upholding the Court's ruling in so far as the Court dismissed the claims against Defendants Kudlack and DeRosa. Dkt .No. 97.[2] However, the Second Circuit remanded the matter to the District Court for the limited purpose of supplementing the record as to whether Plaintiff exhausted his administrative remedies with respect to his deliberate indifference claims against Defendants Albright and Schwebke and his retaliation claim against Defendant Albright. *Id*. (citing the procedures set forth in *United States v. Jacobson*, 15 F.3d 19, 21-22 (2d Cir. 1994), wherein the Circuit maintains its jurisdiction over the appeal thus obviating the need for the filing of a new notice of appeal after the District Court supplies its supplementation).

We start by stating the general law regarding a prisoner's obligation to exhaust available administrative remedies and then assess whether Plaintiff indeed satisfied his obligation with regard

---

[2] The Mandate was not docketed until December 2, 2008. On December 3, 2008, Judge Kahn referred the matter back to this Court for a Report and Recommendation. Dkt. No. 98.

to the claims asserted against Defendants Schwebke and Albright.

## I. DISCUSSION

The Prison Litigation Reform Act of 1996 (PLRA) imposes several restrictive conditions on a prisoner's ability to bring a federal civil rights action. With regard to the issue before this Court, the PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (citations omitted).

Exhaustion of administrative remedies under the PLRA is an affirmative defense which must be raised and proven by the defendants. *Jenkins v. Haubert*, 179 F.3d 19, 28-29 (2d Cir. 1999) (noting that exhaustion of remedies is an affirmative defense); *Howard v. Goord*, 1999 WL 1288679, at *3 (E.D.N.Y. Dec. 28, 1999) (citations omitted) (noting that the burden remains with the defendants to prove that administrative remedies had not been exhausted). The party opposing the affirmative defense "may delay the ultimate determination as to its validity until trial by showing that there is a genuine issue of material fact to be determined." *Id.* (citations omitted).

In New York State, the administrative remedies consist of a three-step review process. First, a grievance is submitted to the Inmate Grievance Review Committee (IGRC), a committee

comprised of both inmates and facility employees.[3] N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5(b). The IGRC reviews and investigates the formal complaint and then issues a written determination. *Id.* Second, if the IGRC decision is appealed, the superintendent of the facility reviews the IGRC's determination and issues a decision. *Id.* at § 701.5(c). Finally, if the superintendent's decision is appealed, the Central Office Review Committee (CORC) makes the final administrative determination. *Id.* at § 701.5(d). Only upon exhaustion of these three levels of review may a prisoner seek relief pursuant to § 1983 in federal court. *Cosme v. Furman*, __ F. Supp. 2d __ , 2008 WL 4823604, at *1 (W.D.N.Y. Nov. 6, 2008) (citing *Neal v. Goord*, 267 F.3d 116, 121 (2d Cir. 2001), *overruled on other grounds by Porter v. Nussle*, 534 U.S. 516).

Plaintiff's claimed constitutional violations evolved from an accident that occurred on December 5, 2000, when a pan fell on Plaintiff's right hand while he was performing his duties as a back-sink worker in the Coxsackie Correctional Facility mess hall. Compl. at ¶ 12. Since the Second Circuit affirmed the District Court's dismissal of the Eighth Amendment claims against Defendants DeRosa and Kudlack, we need not reiterate those claims here. We will, however, briefly restate the bases for the Eighth Amendment claims against Defendants Schwebke and Albright and the First Amendment claim against Albright. Linares asserted that Defendant Schwebke, the Head Cook, violated the Eighth Amendment when, after being informed of the sink accident, refused to send Plaintiff to the infirmary so he could get medical attention for his right hand injury.[4] *Id.* at ¶¶

---

[3] The IGRC is a five-member body consisting of two voting inmates, two voting staff members, and a non-voting chairperson (who may be an inmate, staff member, or volunteer). N.Y. COMP. CODES R. & REGS tit.7, § 701.4.

[4] In our prior Report-Recommendation and Order, we noted that Linares appeared to hold Defendants Schwebke and DeRosa responsible for the accident he sustained since the former allegedly failed to provide proper training and protective gloves while the latter allegedly failed to ensure that his subordinates properly trained the workers and provided proper materials. Compl. at ¶¶ 26-27. In addressing this allegation, we stated that "[absent any allegation that either of these Defendants physically caused the pan to fall onto Plaintiff's arm, we believe Plaintiff's attempt to assert
(continued...)

21-27.  Plaintiff further asserted that Nurse Albright was deliberately indifferent to his serious medical needs when she failed to "produce" Plaintiff to the infirmary as promised and when she failed to order necessary x-rays for Plaintiff.  *Id*. at ¶ 17 & 19.  Finally, Plaintiff asserted that Albright acted in this manner in retaliation against Linares for his previously filed grievances against Albright in 1999 and 2000.  *Id* at ¶¶ 18, 40, & 42.  The following facts relate to the issue of whether Plaintiff fully exhausted his administrative remedies with respect to his deliberate indifference claims against Defendants Albright and Schwebke and his retaliation claim against Defendant Albright.[5]

In support of their Motion for Summary Judgment, Defendants submitted the Declaration of Thomas J. Carroll, Sr., the Inmate Grievance Program Supervisor at Coxsackie.  Dkt. No. 77-8, Thomas J. Carroll, Sr., Decl., dated Feb. 7, 2007.  After being apprised of Linares' claims in this action and reviewing Coxsackie records, Mr. Carroll determined that the only grievance Linares filed concerning the December 5th accident and the treatment he received for his injury is grievance number CX-8048-01.  *Id*. at ¶ 9, Ex. E; Defs.' 7.1 Statement at ¶ 58.  This grievance was completed by Plaintiff, in Spanish, on February 1, 2001, almost two months after the incident, and was received by the IGRC on February 9, 2001, and filed on February 12, 2001; it was also translated into

---

[4](...continued)
an Eighth Amendment claim on these facts is far too tenuous."  Dkt. No. 98 at p. 7, n.4.  We are unsure as to whether the Second Circuit seeks supplementation as to Plaintiff's exhaustion of this purported claim.

[5] We take this moment to note that in opposing Defendants' Motion for Summary Judgment, Linares submitted a document entitled "Statement of Material Facts pursuant to Rule 7.1(a)(3)."  Dkt. No. 84 at pp. 3-9.  That document, however, did not "mirror the movant[s'] Statement of Material Facts by admitting and/or denying each of the movant[s'] assertions in matching numbered paragraphs."  N.D.N.Y.L.R. 7.1(a)(3).  In fact, Plaintiff's purported 7.1 Statement bears almost no correlation to Defendants' 7.1 Statement.  *Compare* Dkt. No. 77-16, Defs.' 7.1 Statement *with* Dkt. No. 84, Pl.'s 7.1 Statement.  As in our previous Report-Recommendation and Order, we are mindful of Plaintiff's *pro se* status and shall, in developing the undisputed facts, refer to his verified Complaint and deposition testimony when practicable.  However, *pro se* status notwithstanding, in light of Plaintiff's failure to specifically controvert facts asserted by Defendants, "[a]ny facts set forth in the [Defendants'] Statement of Material Facts shall be deemed admitted[.]"  N.D.N.Y.L.R. 7.1(a)(3).

English. Carroll Decl., Ex. E. According to the translated version of the grievance, Linares provides a summary of how he fractured his finger on December 5th and the medical care he received, or didn't receive, during that month. *Id*. at p. 4. After noting that he previously filed two grievances against Nurse Albright for medical negligence, Linares explains that his cast is broken and despite informing unnamed members of the medical department, nothing had been done to rectify the situation. *Id*. Though ample details were provided regarding the quality of medical treatment Linares received at Coxsackie, the only relief sought by the grievance was to have copies of his complaint sent to various individuals including the Inspector General, the Attorney General of the State of New York, the Commissioner, and Lester Wright. *Id*.

After submitting this grievance, but prior to any decision being rendered by the IGRC, Plaintiff had a follow-up examination, on February 7, 2001, by an orthopedist wherein Plaintiff's cast was removed and an x-ray was taken. Defs.' 7.1 Statement at ¶ 47. At that time, the consulting orthopedist determined that Plaintiff's fracture was healing. *Id*. On March 2, 2001, the IGRC rendered its unanimous decision recommending that Linares be seen by a doctor as soon as possible. Carroll Decl., Ex. E at p. 9. Linares indicated his agreement with the IGRC response by checking the appropriate box and affixing his signature therewith. *Id*. He did not check the boxes indicating his disagreement with the IGRC decision or that he desired to appeal this matter to the superintendent. *Id*. Nevertheless, as explained by Mr. Carroll, because "action by the superintendent was required," the grievance was automatically referred to the superintendent.[6]

_____

[6] It is not entirely clear why this disposition "required" action by the superintendent. Defendants supplied the Court with DOCS Directive 4041, which sets forth the parameters of the Inmate Grievance Program. Carroll Decl., Ex. D. It appears that this Directive is the most current Directive as it mirrors the language in Title 7 of the New York Codes Rules and Regulations at § 700.1, *et seq*. In this version, committee decisions requiring superintendent action "shall be in the form of recommendations. . . . [and] must be transmitted to the superintendent for action and response," DOCS

(continued...)

Carroll Decl. at ¶ 11.  On March 12, 2001, the superintendent rendered the following response to Linares' complaint: "This grievance is accepted only to the extent that the grievant received appropriate medical attention.  If the grievant wants his complaint sent to anyone else, he is free to do so."  *Id*., Ex. E at p. 2.  The portion of that decision wherein Linares could state his desire to appeal the superintendent's decision to the CORC was left blank.  *Id*.  According to Mr. Carroll's review of Coxsackie records, Plaintiff did not appeal the superintendent's decision to CORC.

At his deposition, Plaintiff testified that after suffering the injury to his right hand, he could not write, but once the cast was removed, he filed a grievance against Defendants Schwebke and DeRosa, which was accepted for filing as CX-8048-01.  Dkt. No. 77-9, Richard Lombardo Decl., dated Feb. 12, 2007, Ex. F, Deposition of Patricio Linares, dated Sept. 16, 2005, at p. 32, lines 20-25 & p. 33, line 7.  Linares explained that he wrote the grievance in Spanish and it was translated to English, however, much was lost in the translation, such as his complaints about DeRosa and about the mess hall rules.  *Id*. at p. 33, lines 19-25; p. 34, lines 1-4 & 17-20.  He further explained that the whole grievance is about Defendants DeRosa and Schwebke regarding what transpired at the mess hall.  *Id*. at p. 34, line 25; p. 35, lines 1-7.  Linares claimed that at the time he wrote the grievance, he did not have Defendant Schwebke's full name, but instead referred to him as "Eri" because that is what everyone called him.  *Id*. at p. 36, lines 12-25.  The substance of his complaints against "Eri" was that he put the mess hall rules out in the open for all to see only after Linares broke his hand.

---

[6](...continued)

Directive 4041(V)(A)(4), and a time-table is provided for transmittal to the superintendent, DOCS Directive 4041(V)(B)(2).  While there appears to be a lack of any list explaining which committee decisions require superintendent action, upon information and belief, any favorable ruling by the IGRC must be implemented by the superintendent.  *See Abney v. McGinnis*, 380 F.3d 663, 668 (2d Cir. 2004) (citing a former version of N.Y. COMP. CODES R. & REGS. tit. 7, § 701.7(a)(4)(vi) for the proposition that "DOCS regulations mandate that favorable IGRC recommendations requiring action by the superintendent [are] transmitted to the superintendent for review, regardless of whether the inmate makes a formal appeal of that favorable action").

*Id.* Later in his testimony, Linares claims that he also grieved the fact that Eri did not send him to the infirmary. *Id.* at p. 39, lines 11-18.  In response to questions about his failure to appeal, Linares referred to the IGRC recommendation and explained that because he agreed with their decision, he did not need to appeal.  *Id.* at p. 41, lines 9-20.  Yet, in his verified Complaint, Linares stated that the CORC, "the last appeal resort, denied the grievance claiming that plaintiff had received appropriate medical care."  Compl. at ¶ 5.

Based upon our review of the record and uncontested material facts outlined above, we conclude that (1) there is no dispute that an inmate grievance procedure existed at Coxsackie, (2) Linares filed only one grievance pertaining to his December 5th injury and the ensuing treatment of his injury, (3) the IGRC recommended that Linares be seen by a doctor as soon as possible, and (4) the superintendent accepted the grievance "to the extent that [Linares] received appropriate medical attention[,]" but, if he wanted his complaint sent elsewhere he was free to do so on his own, Carroll Decl., Ex. E.  We also conclude there is no real dispute that such grievance was not appealed to the CORC.[7]  Thus, irregardless of our review of the  content grieved in grievance CX-8048-01, it would appear that Plaintiff did not fully exhaust his available administrative remedies with respect to any claim raised in his Complaint.

---

[7] The only "dispute" as to whether an appeal was brought to the CORC is manifested by Plaintiff's discrepant testimony.  In his verified Complaint, Plaintiff states that he appealed to CORC who determined he received appropriate medical care, yet, at his deposition, he swore under oath that he did not need to further appeal his grievance beyond the IGRC decision because it had been resolved in his favor.  The Court will not accept this self-contradiction as a means of defeating summary judgment.  *See Mack v. United States*, 814 F.2d 120, 124 (2d Cir. 1987) (citing cases for the "well settled" proposition that "a party's affidavit which contradicts is own prior deposition testimony should be disregarded on a motion for summary judgment"); *see also AB ex rel. EF v. Rhinebeck Cent. Sch. Dist.*, 361 F. Supp. 2d 312, 316 (S.D.N.Y. 2005) (citing cases and extending this proposition to inconsistent allegations made in a complaint and further noting that given the "increased level of reliability of deposition testimony" the court could not "simply disregard plaintiff's earlier sworn testimony in favor of inconsistent post hoc statements prepared for purposes of [the] lawsuit").  Similarly, this Court will not disregard Plaintiff's deposition, and, notwithstanding the clear contradiction, the record clearly shows that no appeal was taken to CORC.

However, our inquiry cannot end there, for there is more to the analysis of this affirmative defense.  Though exhaustion is mandatory, certain caveats apply wherein a prisoner's failure to exhaust may be excused: (1) when administrative remedies are not available to the prisoner, *Abney v. McGinnis*, 380 F.3d 663 (2d Cir. 2004); (2) when the defendants waive the defense by failing to raise or preserve it, *Johnson v. Testman*, 380 F.3d 691 (2d Cir. 2004), or acted in such a manner that they are estopped from raising it, *Ziemba v. Wezner*, 366 F.3d 161 (2d Cir. 2004); and (3) when special circumstances exist to justify the prisoner's failure to comply with the exhaustion requirement, *Giano v. Goord*, 380 F.3d 670 (2d Cir. 2004).  No where in his opposition to Defendants' Motion to Summary Judgment, does Linares address whether he in fact sufficiently satisfied his obligation to exhaust his available administrative remedies prior to bringing suit in federal court.  Yet, there exists in the record at least some explanation for this deficiency, which, given his *pro se* status, we are compelled to consider.  Specifically, at his deposition, Linares claimed he did not appeal any further because he felt he received a favorable response from the IGRC.  Plaintiff's excuse that he received a favorable determination falls within the first category, prompting the Court to evaluate whether further administrative remedies were <u>available</u> to Linares.

According to the English translation of Linares' grievance, he complained about the medical treatment of his broken arm.  Nurses Kudlack and Albright are specifically named and specific reference is made to the grievances Linares filed against Nurse Albright in 1999 and 2000 for medical negligence.  In the conclusion portion of the English translation, Linares explains that his cast is broken in two pieces and nothing had been done to remedy the situation, though the specific request for relief is that copies of his complaint be sent to various individuals.  The English translation provides no reference to Defendant Schwebke either by name or circumstance.  Without

hesitation, this Court could find that in viewing the evidence most favorably to Plaintiff, the English version of the grievance includes complaints against Nurse Albright for deliberate indifference and retaliation, but does not include the claim of deliberate indifference against Schwebke.

The Spanish, original version of the grievance is visibly longer and, according to Linares' deposition testimony, included more details, including problems he had with Defendant Schwebke, who he did not know by name at that time.  According to Linares' testimony, the Spanish version contains the complaint that Schwebke failed to send him to the infirmary for medical attention. Again, if we were to construe the record in a light most favorable to Plaintiff, we could say that he included deliberate indifferent claims against Defendants Schwebke in his original grievance.  Thus, taking the two versions of the grievance together, we can conclude that Plaintiff completed the first of his tri-level obligation to fully exhaust available administrative remedies.  Because he did not appeal this grievance through each level of review, the question for the Court is, did the IGRC's/superintendent's favorable response render other administrative remedies unavailable?[8]

To be "available" under the PLRA, a remedy must afford "the possibility of some relief for the action complained of."  *Booth v. Churner*, 532 U.S. 731, 738 (2001).  To answer our question, we must look not only at the matters grieved and responses received, but also the matters at issue in this action keeping in mind that the concept of "availability" speaks to the "procedural means, not

---

[8] Upon information and belief, at the time Linares filed his grievance and received a determination therewith, there was no mechanism in DOCS regulations for appealing a favorable determination. *See Abney v. McGinnis*, 280 F.3d 663, 668 (2d Cir. 2004) (noting that while a favorable IGRC response is automatically transmitted to the superintendent for action, "[t]here is no similar procedure available for automatic advancement of a favorable ruling from the superintendent to the CORC").  In 2006, the regulations were amended and a new section was added allowing for oversight and follow-up to ensure implementation of favorable dispositions are carried out. *See* N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5(c)(4) ("Implementation of decisions.  The IGP supervisor or the superintendent must verify compliance with superintendents' responses that require some form of implementation.  Documentation of compliance must be filed with the grievance record.  If a decision is not implemented within 45 days, the grievant may appeal to CORC citing lack of implementation as a mitigating circumstance."), *adopted on* June 28, 2006 by New York Regulation Text – Netscan, 2006 NY REG TEXT 7 NYCRR 701 (JUNE 28, 2006), *effective* July 1, 2006.

the particular relief ordered," since "one 'exhausts' processes, not forms of relief." *Id*. at 739.  Thus, though an inmate may be interested in obtaining solely monetary relief, the fact that the grievance program does not afford such relief does not mean that other administrative remedies are not available to the prisoner.  *See generally id*.  While Linares may have grieved Albright's and Schwebke's deliberate indifference and Albright's retaliation, the IGRC's response was that he receive immediate medical attention, perhaps in response to the fact that he claimed he had a broken cast and no one would fix it.  The superintendent then accepted the grievance to the extent Linares' received proper medical care, perhaps due to the fact that he, by that point, had seen a doctor who had removed the cast and provided another x-ray.  Regardless of these postulations, the fact remains that Plaintiff's civil Complaint makes no mention of a failure to fix a broken cast and the relief sought is well beyond the desire for medical care.  The fact that Plaintiff felt the IGRC was favorable to him did not excuse his obligation to pursue available remedies with regard to his claims against Defendants Albright and Schwebke.  In *Ruggiero v. County of Orange*, the Second Circuit grappled with the situation where an inmate sought a transfer from his cell for fear that his cell mate may harm him; instead of being transferred to a new cell, the prisoner was transferred to another facility. 467 F.3d 170, 177 (2d Cir. 2006).  Though in his lawsuit he asserted that the transfer to another facility was retaliation for his complaints, the inmate claimed he did not need to file a grievance since he had been afforded the remedy he desired, namely, transfer out of his cell and out of harms way.  The Second Circuit considered its past decisions and Supreme Court precedent and determined that administrative remedies were still available.  In rendering this decision, the Second Circuit distinguished the case from the situation in *Abney v. McGinnis*, 380 F.3d 663 (2d Cir. 2004), wherein the inmate kept receiving favorable decisions that were never implemented, and instead

relied upon *Booth v. Churner*, 532 U.S. 731 (2001) and *Braham v. Clancy*, 425 F.3d 177 (2d Cir. 2005), for the proposition that other remedies still existed such as disciplining the officers or changing policy and thus being provided with a desirable result did not render all remedies unavailable. *Id.* Similarly, with regard to the claims in this action, Linares had other remedies available to him prior to initiating this federal case. Arguably, though the IGRC's/superintendent's response was acceptable, it did not address his complaints against the Defendants in this action. Linares could have pursued the fact that neither the IGRC nor the superintendent took any action with regard to his complaints of employee misconduct. Linares' receipt of medical care, while arguably providing him with some relief sought, "did not provide him with all of the relief available to him. . . . [and] so long as some remedy remains available, failure to exhaust is not excused." *Ruggiero v. County of Orange*, 467 F.3d 170,177 (2d Cir. 2006).

## II. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that in supplementing the record to the Second Circuit, the District Judge adopt the facts as set forth by this Court as undisputed and find that the Plaintiff did not exhaust his available administrative remedies with regard to the deliberate indifference claims stated against Defendants Schwebke and Albright nor the retaliation claim against Defendant Albright; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action at the addresses listed above.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court.

*-12-*

**FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE**

**APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), & 6(e).

Date:   January 9, 2009
        Albany, New York

_____

RANDOLPH F. TREECE
United States Magistrate Judge

*-13-*